IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:20-CT-3321-FL

| | |
|---|---|
| CATHERINE M. FLYNN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) ORDER |
| | ) |
| STEPHEN M. WILSON, VIVIAN POETTER, JOHN DOE MEMBERS OF THE UTILIZATION MANAGEMENT SECTION, and JOHN AND JANE DOES, MEDICAL STAFF EMPLOYED BY NORTH CAROLINA DEPARTMENT OF PUBLIC SAFETY, | ) |
| | ) |
| Defendants. | ) |

This matter is before the court on defendants Stephen M. Wilson ("Wilson") and Vivian Poetter's ("Poetter") motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) (DE 26). The motion is fully briefed, and in this posture, the issues raised are ripe for ruling. For the following reasons, the court denies defendants' motion.

**STATEMENT OF THE CASE**

Plaintiff, a former state pretrial detainee represented by counsel, commenced this action by filing a complaint in state court. On October 2, 2020, the action was removed to this court. Plaintiff asserts claims for violations of her civil rights pursuant to 42 U.S.C. § 1983 and violations under the North Carolina Constitution. Plaintiff alleges defendants were deliberately indifferent towards her medical needs regarding her broken elbow, in violation of the North Carolina Constitution and Eighth Amendment to the United States Constitution. As relief, plaintiff seeks:

1) compensatory and punitive damages; 2) reasonable attorney's fees and litigation expenses; 3) costs of court and interest; 4) a jury trial; and 5) any other relief the court deems just and proper.

On April 30, 2021, the court allowed plaintiff leave to file an amended complaint, over defendants' opposition, providing the that operative complaint going forward was the amended complaint filed by plaintiff on November 20, 2020. (See Order (DE 25); Am. Compl. (DE 16)).

On May 20, 2021, defendants Wilson and Poetter filed the instant motion to dismiss.[1] They argue plaintiff has failed to state a claim for deliberate indifference, and they are entitled to qualified immunity.[2] On July 1, 2021, plaintiff responded in opposition.

### STATEMENT OF THE FACTS

The facts alleged in the operative amended complaint may be summarized as follows. On July 17, 2017, plaintiff was booked into the Onslow County Detention Center. (Am. Compl. (DE 16) ¶ 14). On or around August 4, 2017, plaintiff fell from the top bunk of her cell injuring her left arm and elbow. (Id. ¶ 15). Plaintiff was taken to the Emergency Department at Onslow Memorial Hospital three days later. (Id. ¶ 16). She reported pain, swelling, bruising, and decreased range of motion in her left elbow. (Id.). Plaintiff was diagnosed with a closed fracture of the proximal end of her left ulna and cellulitis of the skin over the injury site. (Id. ¶ 17). Plaintiff was informed she needed surgery to repair the fracture, but the cellulitis had to heal before

---

[1] Defendants Wilson and Poetter request that the court take judicial notice of plaintiff's original complaint. The court takes judicial notice of the fact the original complaint was filed. See Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

[2] Defendants also argue plaintiff fails to state a claim for medical malpractice under North Carolina law. However, in her response, plaintiff clarifies she is not pursuing claims of medical malpractice. Accordingly, this argument is not addressed herein.

surgery could be performed. (Id.). She was instructed to follow-up with an orthopedist in one week. (Id.).

On August 14, 2017, plaintiff was examined at the Carolina Center for Surgery. (Id. ¶ 18). Swelling, discoloration, and palpable defect along the left olecranon were noted. (Id.). Plaintiff's cellulitis had healed, and it was recommended plaintiff undergo an open reduction internal fixation for the fracture. (Id.).

On August 16, 2017, an Onslow County Superior Court judge ordered plaintiff's transfer to the North Carolina Department of Correction in Raleigh, North Carolina for medical treatment. (Id. ¶ 19). That same day, plaintiff was transferred to the North Carolina Correctional Institution for Women ("NCCIW"). (Id.). Plaintiff was admitted into the Inpatient Medical Unit and evaluated. (Id. ¶ 20).

On August 17, 2017, defendant Wilson examined plaintiff and submitted an urgent recommendation that she see an orthopedist for surgical repair of her elbow. (Id. ¶ 21). The recommendation stated that plaintiff "needs to see orthopedist – please expedite – needs repair." (Id.). Defendant Wilson believed plaintiff required surgery or she could face pain, deformity, weakness, and partial loss of use. (Id. ¶ 22). Plaintiff agreed with defendant Wilson's assessment and wanted to have surgery as soon as possible. (Id. ¶ 23).

On August 29, 2017, plaintiff's referral for an orthopedic consult was approved, and her appointment was scheduled for September 18, 2017. (Id. ¶ 24). During the month prior to her appointment, plaintiff was evaluated by defendant Wilson four times. (Id. ¶ 25). During each evaluation, plaintiff's elbow was obviously deformed, and she complained of severe pain. (Id.). Defendant Wilson took no action to follow-up on his referral or ensure plaintiff was going to

3

receive her surgical consult. (Id.). During this month, plaintiff was also examined daily by North Carolina Department of Public Safety ("DPS") medical staff. (Id. ¶ 26). During each exam, it was noted that plaintiff's elbow was obviously deformed, and she complained of severe pain. (Id.). However, DPS medical staff took no action regarding plaintiff's outstanding request for an urgent orthopedic consult, including failing to make telephone calls, send emails, or otherwise speak with defendant Wilson or anyone else. (Id.). Further, UNC Orthopedics was not informed of plaintiff's urgent need for an appointment. (Id. ¶ 27).

On September 18, 2017, plaintiff was examined by Jason Maslow, PA-C, at UNC Orthopedics. (Id. ¶ 28). He noted swelling and restricted range of motion in plaintiff's left elbow. (Id.). An x-ray revealed "a comminuted displaced and distracted intra-articular fracture of the left proximal ulna with sclerotic margins indicating chronic injury. It also showed a possible displaced fracture fragment." (Id.). Dr. Maslow discussed plaintiff's treatment with Reid Draeger, M.D. (Id. ¶ 29). Dr. Draeger requested that plaintiff return to his office in two days for a surgical consult. (Id.). Defendant Wilson was copied on the medical report. (Id.).

Defendants did nothing to ensure plaintiff returned two days later, and she was not taken to the appointment. (Id. ¶ 30). Defendant Wilson took no action to ensure plaintiff's surgical consult was scheduled. (Id. ¶ 31).

Several days after her appointment with Dr. Maslow, defendant Poetter reviewed plaintiff's medical records, including those stating plaintiff had a fractured elbow requiring surgery and she should have had a surgical consult with Dr. Draeger a week prior. (Id. ¶ 32). Defendant Poetter did not call, email, or otherwise reach out to DPS medical staff or defendant Wilson to ensure the surgical consult had taken place. (Id.). Further, DPS medical staff regularly entered notes into

plaintiff's records indicating the urgent request for a surgical consult was still pending weeks after Dr. Draeger should have evaluated her. (Id. ¶ 33). No one made calls or put effort into having plaintiff evaluated by Dr. Draeger. (Id.).

On October 24, 2017, plaintiff was taken back to UNC Orthopedics, but rather than seeing Dr. Draeger as recommended, she had been scheduled for another appointment with Dr. Maslow. (Id. ¶ 34). Dr. Maslow noted "[u]pon last visit, I recommended she see Dr. Draeger later that week however appointment has been made to see me 5 weeks after her visit." (Id. (alteration in original)). Dr. Maslow again examined plaintiff's elbow and noted "obvious deformity where the olecranon is superiorly displaced adjacent to the distal humerus." (Id. ¶ 35). Defendant Wilson was again copied on the medical report. (Id.).

When plaintiff was retuned to NCCIW, she reported to medical staff that she had been taken to the wrong doctor. (Id. ¶ 36). An administrative note was written and forwarded to defendant Wilson. (Id.). Within an hour, defendant Wilson reviewed the note. (Id.). However, he took no action to determine why plaintiff was taken to the wrong doctor or to correct the error. (Id.). He also did not reach out to DPS medical staff and direct them to make another appointment, or contact UNC Orthopedics to schedule plaintiff's appointment himself. (Id.).

In November 2017, plaintiff submitted at least two sick calls regarding her continued left elbow pain to DPS medical staff. (Id. ¶ 37). However, DPS medical staff failed to contact defendant Wilson regarding plaintiff's outstanding requests for treatment. (Id.).

In December 2017, defendant Poetter examined plaintiff for an unrelated health issue but did not take any action regarding plaintiff's fractured elbow. (Id. ¶ 38). During the examination, defendant Poetter observed plaintiff's deformed elbow. Although defendant Poetter reviewed

5

plaintiff's medical records and had treated plaintiff's fracture in the past, she did not reach out to defendant Wilson or DPS medical staff regarding the surgical recommendation. (Id.).

On January 29, 2018, plaintiff was taken to an appointment with Dr. Draeger. (Id. ¶ 39). Plaintiff reported continued pain affecting her quality of life. (Id.). Upon examination, there was a palpable defect of her elbow at the fracture site, and plaintiff could not fully extend her elbow. (Id.). An x-ray revealed non-union of the olecranon fracture. (Id.). Dr. Draeger provided defendants with instructions regarding scheduling plaintiff's surgery, including the name and telephone number for the surgery scheduler and pre-operative instructions. (Id. ¶ 40).

On March 2, 2018, plaintiff underwent surgical repair for her fracture. (Id. ¶ 41). This included: 1) "left olecranon nonunion open reduction internal fixation"; 2) "left elbow contracture release with capsulectomy"; 3) "left triceps tenolysis"; and 4) "left cubital tunnel decompression." (Id.).

On August 2, 2018, NCCIW informed Onslow County Sherriff's Office that plaintiff was ready for transport back to Onslow County Detention Center. (Id. ¶ 42). The Onslow County Sherriff's Department was not informed of Dr. Draeger's recommendation that plaintiff begin a physical therapy strengthening program. (Id.). Plaintiff remained in the Onslow County Detention Center until her release on February 26, 2019. (Id. ¶ 43).

After her release, plaintiff was employed as a factory worker in North Carolina and then Ohio. (Id. ¶ 44). On August 22, 2019, plaintiff presented to her primary care physician complaining of left forearm pain while working. (Id. ¶ 45). She further reported that she had been unable to fully extend her left arm without pain since her surgery. (Id.). The primary care physician instructed her to take 800mg ibuprofen and wear a compression sleeve. (Id.). At her

September 27, 2019, follow-up visit, plaintiff's left elbow pain had improved with the compression sleeve and finding a new position as a quality assurance inspector, which was less strenuous work. (Id. ¶ 46). During plaintiff's February 4, 2020, visit, plaintiff reported continued pain, swelling, and limited range of motion. (Id. ¶ 47). Her primary care physician referred her to the Crystal Orthopedic Center for evaluation. (Id.).

At the Crystal Clinic Orthopedic Center, plaintiff was evaluated by Ronald Mineo, M.D., who diagnosed her with left elbow bursitis, which he attributed to the seven-month delay in repairing her fracture and incomplete post-surgical treatment. (Id. ¶ 48). On May 20, 2020, Dr. Mineo performed a bursectomy and hardware removal. (Id. ¶ 49). Dr. Mineo opined that plaintiff would continue to experience pain and limited range of motion because the fracture was not repaired in a timely manner. (Id.).

**COURT'S DISCUSSION**

A. Standard of Review

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations

omitted). Additionally, the court need not "accept as true [factual] allegations that contradict matters properly subject to judicial notice or by exhibit." See Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (quoting Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001)).

"After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). In reviewing a motion for judgment on the pleadings, the court generally "appl[ies] the same standard as a [Rule] 12(b)(6) motion to dismiss." Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc., 674 F.3d 369, 375 (4th Cir. 2012) (citing Burbach Broad. Co. of Delaware v. Elkins Radio Corp., 278 F.3d 401, 405-06 (4th Cir. 2002)).

B. Analysis

    1. Eighth Amendment Claims

Plaintiff alleges defendants were deliberately indifferent to her serious medical needs regarding her fractured left elbow, in violation of the Eighth Amendment to the United States Constitution. The Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (1996). "In order to make out a prima facie case that prison conditions violate the Eighth Amendment, a plaintiff must show both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (internal quotation omitted). The first prong is objective – the prisoner must show that "the deprivation of [a] basic human need was objectively sufficiently serious." Id. (internal quotation omitted). In the medical context, a basic human need is "one that has been diagnosed by a physician as

8

mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (quoting Henderson v. Sheahan, 196 F.3d 839, 846 (7th Cir. 1999)).

The second prong is subjective – the prisoner must show that "subjectively the officials acted with a sufficiently culpable state of mind." See Strickler, 989 F.2d at 1379 (internal quotations omitted). The mental state for "deliberate indifference entails something more than negligence, . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer v. Brennan, 511 U.S. 825, 835 (1994). "It requires that a prison official know of and disregard the objectively serious condition, medical need, or risk of harm." Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995); see Farmer, 511 U.S. at 837. A plaintiff therefore must establish the prison official's "actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014) (citing Farmer, 511 U.S. at 837–39). The subjective knowledge requirement can be proved "through direct evidence of a prison official's actual knowledge or circumstantial evidence tending to establish such knowledge . . . ." Scinto v. Stansberry, 841 F.3d 219, 225–26 (4th Cir. 2016).

Deliberate indifference is thus "a particularly high bar to recovery." Iko, 535 F.3d at 241. For claims involving medical care, "[d]isagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). Negligence or medical malpractice in diagnosis or treatment are not exceptional circumstances. See id.; see also Estelle v. Gamble, 429 U.S. 97, 105–08 (1976).

9

Defendants Wilson and Poetter argue that plaintiff fails to adequately allege the subjective prong. Defendant specifically argues that defendants did not know their orders regarding plaintiff's treatment were not being followed and that plaintiff does not allege they actually reviewed the medical records from UNC Orthopedics. (Def. Mem. (DE 27) at 7–8). The court disagrees.

As noted above, plaintiff alleges that, on August 17, 2017, defendant Wilson submitted an urgent recommendation that plaintiff see an orthopedist to undergo surgical repair. (Am. Compl. (DE 16) ¶ 21). Prior to plaintiff's orthopedic consult, she was examined by defendant Wilson four times during which he noted an obvious deformity and she complained of severe pain. (Id. ¶ 25). On September 18, 2017, at UNC Orthopedics, Dr. Maslow examined plaintiff, and Dr. Draeger requested to see plaintiff in two days' time. (Id. ¶ 28). Defendant Wilson was copied on the medical report. (Id.). However, plaintiff was not taken to the appointment with Dr. Draeger.

Several days after the appointment with Dr. Maslow, defendant Poetter reviewed plaintiff's medical records, including those stating the need for surgery and the appointment with Dr. Draeger that was missed. (Id. ¶ 32). Plaintiff was not returned to UNC Orthopedics until October 24, 2017, when she was taken to an appointment with the incorrect doctor, Dr. Maslow. (Id. ¶¶ 34–35). Dr. Maslow again copied defendant Wilson on the medical report. (Id. ¶ 35). Upon her return, plaintiff informed medical staff she had been taken to the wrong doctor. (Id. ¶ 36). A note was placed in plaintiff's records and forwarded to defendant Wilson who read the note within the next hour. (Id.).

10

In December 2017, defendant Poetter again examined plaintiff and reviewed plaintiff's medical records. (Id. ¶ 38). Plaintiff did not see Dr. Draeger for her surgical consultation until January 29, 2018, and she underwent surgery on March 2, 2018. (Id. ¶¶ 39-41).

Under these facts, plaintiff has sufficiently alleged defendants Wilson and Poetter were both aware of plaintiff's fractured elbow, including the fact the sole reason she was transferred to NCCIW was to receive surgery to correct the fracture. Both examined her multiple times and observed the deformity in her elbow. Further, defendant Poetter reviewed plaintiff's medical records as least twice.

Plaintiff also sufficiently alleges defendants Wilson and Poetter knew the excessive risks of harm to plaintiff as a result of her fracture. At the 12(b)(6) stage, the court may infer that defendant Wilson prescribed a set of treatments and recommendations because he subjectively believed it was necessary and, thus, must have known that failure to provide them would pose an excessive risk to plaintiff's health. See Jackson, 775 F.3d at 179 ("[A] doctor's failure to provide care that he himself deems necessary to treat an inmates serious medical condition may constitute deliberate indifference."). Plaintiff also alleges that her elbow was obviously deformed and both defendants were aware of treatment recommendations and the need for surgery. See Farmer, 511 U.S. at 842 (noting "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious"). At the latest, defendant Wilson was aware his prescribed treatment was not being followed when he read the October 24, 2017, note. Defendant Poetter would have been aware plaintiff was not being taken to prescribed appointments upon her two reviews of plaintiff's medical records.

11

Defendants Wilson and Poetter further argue that plaintiff does not allege they were authorized to provide the treatment plaintiff required. (Def. Mem. (DE 27) at 8, 9). However, from the facts alleged, there were certain actions available to them that could have been taken but were not. (See Am. Compl. ¶¶ 25, 30–33, 36, 38 (alleging no action was taken).

Accordingly, plaintiff has stated a claim that defendants Wilson and Poetter were deliberately indifferent to her serious medical needs.

2. State Constitutional Claims

The federal standard for Eighth Amendment constitutional violations applies to violations of the North Carolina constitutional regarding cruel or unusual punishment. State v. Green, 348 NC. 588, 603, 502 S.E.2d 819, 828 (1998). Accordingly, plaintiff has stated a claim for violations of her state constitutional rights for the same reasons stated above.

3. Qualified Immunity

Lastly, defendants Wilson and Poetter contend they are entitled to qualified immunity. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Sims v. Labowitz, 885 F.3d 254, 260 (4th Cir. 2018). In other words, a government official is entitled to qualified immunity when the plaintiff has not demonstrated a violation of a constitutional right, or the court concludes that the right at issue was not clearly established at the time of the official's alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 232, 236 (2009).

Here, defendants argue that plaintiff has not alleged a constitutional violation. As set forth above, however, the court finds the complaint sufficiently alleges an Eighth Amendment claim for

deliberate indifference to serious medical needs. Defendants do not argue that plaintiff's right to be free from deliberate indifference to serious medical needs was not clearly established when the events occurred. See Scinto v. Stansberry, 841 F.3d 219, 236 (4th Cir. 2016) (stating such right has been clearly established in this circuit since 1976). Accordingly, as this stage of the proceedings, the court finds defendants Wilson and Poetter are not entitled to qualified immunity.

## CONCLUSION

Based on the foregoing, the court DENIES defendants Wilson and Poetter's motion to dismiss (DE 26). An initial order will follow.

SO ORDERED, this the 29th day of March, 2022.

_____
LOUISE W. FLANAGAN
United States District Judge

13